Donald SCHUMACHER, Sr., Individually and as Personal Representative of the Estate of Donald Schumacher, Jr., and Sharon Schumacher, Petitioners–Appellees,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellant.

No. 93–5006.

United States Court of Appeals, Federal Circuit.

July 28, 1993.

William Dobreff, Dobreff & Dobreff, of Warren, MI, argued for petitioners-appellees.

Margaret S. Hewing, Attorney, Dept. of Justice, of Washington, DC, argued for respondent-appellant. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen. and Barbara C. Biddle, Attorney.

Before RICH, MICHEL, and CLEVENGER, Circuit Judges.

MICHEL, Circuit Judge.

The Secretary of the Department of Health and Human Services (the Secretary) appeals the threshold decision underlying the judgment of the United States Claims

Court[1] that sustained the special master's decision denying the Secretary's motion to dismiss for lack of subject matter jurisdiction Donald Schumacher, Sr.'s and Sharon Schumacher's (the Schumachers') petition for compensation under the National Vaccine Injury Compensation Program, established pursuant to the National Childhood Vaccine Injury Act (Vaccine Act), 42 U.S.C. §§ 300aa–1 through 300aa–34 (1988, Supp. I 1989, Supp. II 1990, & Supp. III 1991). In their petition, the Schumachers requested compensation for the death of their son, Donald Schumacher, Jr. (Donald), which was allegedly related to a diphtheria-pertussis-tetanus (DPT) vaccine administered to Donald. The Secretary contended that the petition was barred by 42 U.S.C. § 300aa–11(a)(5)(B).[2] Because we conclude that the Schumachers' district court suit was not a "civil action" within the meaning of § 300aa–11(a)(5)(B), inasmuch as it was not against a vaccine administrator or manufacturer, that section does not bar the Schumachers' petition. Therefore, we affirm.

## BACKGROUND

The full facts and details of this case are set forth in the Claims Court's opinion, which is published at *Schumacher v. Secretary of the Department of Health & Human Services*, 26 Cl.Ct. 1033 (1992). We provide here only the facts relevant to this limited appeal.

The Schumachers originally filed a petition for compensation under the Vaccine Act for Donald's death on November 2, 1989, claiming that Donald's death was connected with the DPT vaccinations Donald received on November 24, 1981 and January 8, 1982. When it was discovered that the Schumachers had pending a lawsuit against the vaccine administrator, Dr. Martin Feldman, for malpractice in the administration of the vaccine, the Secretary moved for dismissal of the petition as barred by § 300aa–11(a)(5)(B), which precludes the filing of a petition under the Vaccine Act if the petitioner "has pending a civil action for damages for a vaccine-related injury or death." The motion was granted. The Schumachers subsequently dismissed their action against Dr. Feldman and filed another petition under the Vaccine Act. The Secretary then discovered that the Schumachers had pending a suit in the United States District Court for the District of Massachusetts against Merrell Dow and other related companies (the Merrell Dow suit) for their alleged negligence in the manufacture and distribution of the drug, Bentyl.[3] None of the companies involved in the Merrell Dow suit was the DPT vaccine manufacturer. In that suit, the Schumachers alleged, *inter alia*, that Bentyl alone or "together with other chemical substances, biological substances, medications, drugs, or other agents ... caused severe injuries to ... Donald ... and predisposed him to other adverse reactions from chemical substances, biological substances, medications, drugs, or other agents which eventually resulted in his death on March 4, 1982." Joint Appendix at 95. Asserting that the Merrell Dow suit constituted "a civil action for damages for a vaccine-related injury or death" for the purposes of § 300aa–11(a)(5)(B), the Secretary filed with the special master a motion to dismiss the new petition for lack of jurisdiction.

The special master, deciding that the Merrell Dow suit was not a "civil action" covered by § 300aa–11(a)(5)(B), denied the Secretary's motion to dismiss and, after a hearing on the petition, granted compensation to the Schumachers for Donald's death in the amount of $250,000. Upon a motion for review filed by the Secretary, the Claims Court sustained the special master's decision, both as to the denial of the Secretary's motion to dismiss and the grant of compensation to the Schumachers. The Secretary appealed only

---

1. As of October 29, 1992, the "United States Court of Federal Claims." Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516 (1992). Because the court was still titled the "United States Claims Court" at the time of its deciding this case, we use the earlier title in this opinion.

2. All section references hereinafter refer to 42 U.S.C., unless otherwise stated.

3. Bentyl is an anti-colic medication with which Donald was treated prior to receipt of his first DPT vaccination.

the denial of the motion to dismiss to this court.

## DISCUSSION

The sole issue in this appeal is whether the Merrell Dow suit constituted a "civil action for damages for a vaccine-related injury or death" under § 300aa–11(a)(5)(B) so as to deprive the Claims Court of jurisdiction over the Schumachers' petition for compensation under the Vaccine Act.

## I. The Controlling Section

Section 300aa–11(a)(5)(B) provides: "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) of this section for such injury or death." Although the statute defines "vaccine-related injury or death" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine," § 300aa–33(5), it does not define "civil action." In order to determine to what types of civil actions the prohibitions of § 300aa–11(a)(5)(B) apply, it is necessary to look at that subsection in context with other provisions of that section and the Vaccine Act as a whole.

## II. Other Sections and Provisions of the Vaccine Act

The Vaccine Act established a National Vaccine Injury Compensation Program (the Program), see § 300aa–10(a), which separates potential petitioners into two broad categories: those who petition with respect to a vaccine administered before the effective date of the Program, October 1, 1988 (pre-effective-date vaccination), and those who petition with respect to a vaccine administered after that date (post-effective-date vaccination). The Program breaks these groups down further, prescribing rules for whether or not a person may file a petition for compensation under the Program depending upon into which subgroup the potential petitioner falls. For example, "[i]f in a civil action brought against a vaccine administrator or manufacturer before [October 1, 1988] damages were denied for a vaccine-related injury or death or if such civil action was dismissed with prejudice, the person who brought such action may file a petition ... for such injury or death." § 300aa–11(a)(4). However, "[i]f in a civil action brought against a vaccine administrator or manufacturer for a vaccine-related injury or death damages are awarded under a judgment of a court or a settlement of such action, the person who brought such action may not file a petition ... for such injury or death." § 300aa–11(a)(7).

Furthermore, "[n]o person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer ... for damages arising from a vaccine-related injury or death associated with a [post-effective-date vaccination]," § 300aa–11(a)(2)(A), unless that person has brought a petition under the Program, the Claims Court has issued a judgment on that petition, and the person has elected in writing not to accept the judgment or receive any compensation awarded or unless the person withdraws such petition under certain conditions. §§ 300a–11(a)(2)(A), –21(a). Likewise, "[n]o vaccine administrator or manufacturer may be made a party to a civil action (other than a civil action which may be brought under paragraph (2) [after election not to accept judgment or withdrawal of the petition]) for damages for a vaccine-related injury or death associated with [a post-effective-date vaccination]." § 300aa–11(a)(3). Thus, the Vaccine Act precludes any person from collecting damages for the vaccine-related injury or death from both (1) a civil action against the vaccine administrator or manufacturer and (2) the Program. And the Vaccine Act requires a person who has not filed such a civil action as of November 15, 1988[4] to file a

---

4. Although the effective date of the Program was October 1, 1988, the Claims Court did not start accepting petitions until November 15, 1988.

See H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), reprinted in 1989 U.S.C.C.A.N. 1906, 2237. Section 300aa–11(a)(6) was therefore

petition under the Program first or be forever precluded from either form of relief.

## III. The Parties' Contentions

In the instant appeal, the Secretary argues that the Schumachers' petition was jurisdictionally barred because their Merrell Dow suit was a "civil action for damages for a vaccine-related injury or death" under § 300aa–11(a)(5)(B). The Secretary reasons, *inter alia*, that because § 300aa–11(a)(5)(B) does not include the language "against the vaccine administrator and manufacturer" and that the definition of "vaccine-related injury or death" is "an illness, injury, condition, or death *associated with* one or more of the vaccines set forth in the Vaccine Injury Table," § 300aa–33(5) (emphasis added), the term "civil action" there applies to *all* civil actions that implicate the vaccine as part of the injury or death sued upon, regardless of who is sued. Because the Schumachers alleged in the Merrell Dow suit that Bentyl alone or *in combination with* other substances or drugs caused injuries to Donald, predisposing him to further injury and death, the Secretary argues that the Merrell Dow suit is a "civil action for damages for a vaccine-related injury or death" for the purposes of § 300aa–11(a)(5)(B). Thus, the Secretary asserts that § 300aa–11(a)(5)(B) jurisdictionally barred the Schumachers from filing a petition.

The Schumachers, on the other hand, argue that the language "civil action for damages for a vaccine-related injury or death" under § 300aa–11(a)(5)(B) refers only to civil actions against the vaccine administrator or manufacturer. Merrell Dow is not the vaccine manufacturer, but rather the manufacturer of Bentyl. And because their civil action against Merrell Dow claims that *Bentyl* injured their child and predisposed him to injury from other substances and drugs, which may include the DPT vaccine, the

Schumachers assert that the suit is not a "civil action for damages for a vaccine-related injury or death" covered by § 300aa–11(a)(5)(B).[5] Accordingly, the Schumachers maintain that the Claims Court had jurisdiction of their petition and that they are entitled to the compensation awarded thereunder.

## IV. Comparative Analysis

■ The phrase "civil action for damages for a vaccine-related injury or death" or its functional equivalent (sometimes referred to herein as just "civil action") is used many times in the Vaccine Act to mean different things depending on the phrase's context in the statute. In several places, the "civil action" is specified as a civil action against a vaccine administrator or manufacturer. *See, e.g.,* §§ 300aa–11(a)(2)(A), –11(a)(4), –11(a)(7), –21(a), –23(a). Elsewhere, the term "civil action" is used without such a modifier, such as in § 300aa–11(a)(5)(B), the provision at issue in this appeal.

In these latter instances, Congress has sometimes used the term clearly to mean *any* civil action involving an injury or death associated with the administration of a vaccine. For example, § 300aa–11(a)(3) provides: "No vaccine administrator or manufacturer may be made a party to a *civil action* (other than a civil action which may be brought under paragraph (2)) *for damages for a vaccine-related injury or death associated with* the administration of a vaccine after the effective date of this subpart." (Emphasis added.) Obviously, if a vaccine administrator or manufacturer may not be made a party to such civil action, then "civil action" in this provision means a civil action that implicates a vaccine-related injury or death brought against *any* party that is *not* a vaccine administrator or manufacturer.

amended in 1989, *see* Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 6601(c)(4), 103 Stat. 2106, 2285 (1989), in order to cover the applicable civil actions that fell within the time period between the effective date of the Program and the actual start-date of the Program in the Claims Court. *See* H.R.Rep. No. 247 at 511, *reprinted in* 1989 U.S.C.C.A.N. at 2237.

5. It is undisputed that § 300aa–11(a)(5)(B) applies only to civil actions for *vaccine-related injury or death*. Because our construction of "civil action" resolves the issue in this appeal, we need not decide whether the Merrell Dow suit involves a "vaccine-related injury or death."

Elsewhere, Congress has nevertheless clearly used the phrase "civil action" to mean only a civil action against a vaccine administrator or manufacturer, even though the modifying phrase "against a vaccine administrator or manufacturer" is not included in the provision. For example, § 300aa–21(a) provides that after the Claims Court has entered judgment on a petition and this court has issued its mandate, the petitioner

shall file with the clerk of the United States Claims Court—

(1) if the judgment awarded compensation, an election in writing to receive the compensation or to file a *civil action for damages for such injury or death,* or

(2) if the judgment did not award compensation, an election in writing to accept the judgment or to file a *civil action for damages for such injury or death.*

(Emphasis added.) The language following these election provisions makes clear that the election is between (1) receiving the compensation awarded or accepting the non-award judgment and (2) filing a civil action against a vaccine administrator or manufacturer:

If a person elects to receive compensation under a judgment of the court in an action for a vaccine-related injury or death associated with [a pre-effective-date vaccination], or is deemed to have accepted the judgment of the court in such an action, such person may not bring or maintain a civil action for damages *against a vaccine administrator or manufacturer* for the vaccine-related injury or death for which the judgment was entered. For limitations on the bringing of civil actions for vaccine-related injuries or deaths associated with [a post-effective-date vaccination], see section 300aa–11(a)(2) of this title.

§ 300aa–21(a) (emphasis added). Section 300aa–11(a)(2), in turn, precludes a person from bringing "a civil action for damages in an amount greater than $1,000 or in an un-

specified amount against a vaccine administrator or manufacturer" for a vaccine-related injury or death associated with a post-effective-date vaccination unless that person has already filed a petition under the Program and made the election in § 300aa–21(a) not to receive a compensation award or accept a non-award judgment.

Consequently, "civil action" in § 300aa–11(a)(3) clearly means something different from "civil action" in § 300aa–21(a) where "civil action" means *only* a civil action against a vaccine administrator or manufacturer. *Cf. Massing v. Secretary of the Dep't of Health & Human Servs.,* 926 F.2d 1133 (Fed.Cir.1991) (construing the phrase "civil action for damages for such vaccine-related injury or death" in § 300aa–11(c)(1)(E) to mean a vaccine-related civil action against any party).[6] Therefore, Congress has clearly not used the phrase "civil action for damages for a vaccine-related injury or death" or its functional equivalent to mean the same thing in each of its incarnations. Accordingly, when the phrase is used without clear references, such as in § 300aa–11(a)(5)(B), the meaning of the "civil action" can only be determined by looking at the purpose of the provision within the general statutory scheme, as illuminated by the legislative history.

### V. Legislative History and Statutory Purpose

■ The Secretary's interpretation of the statute conflicts with the statutory scheme and its legislative history. The Secretary does not provide any legislative history to support his view that "civil action" in the relevant provision is not limited to action against a vaccine administrator or manufacturer. Indeed, the Secretary merely states:

Nor is there clear legislative history to support the Claims Court's interpretation [that "civil action" in § 300aa–11(a)(5)(B)

---

**6.** In *Massing,* this court, by merely looking at the text of § 300aa–11(c)(1), without further analysis or resort to legislative history, held that that section was not "limited by the 'vaccine administrator or manufacturer' language of § 11(a)(7)." 926 F.2d at 1135. The court further determined that "the word 'petition' throughout § 11 is lim-

ited to a petition which meets the requirements of § 11(c)." *Id.* The court stated that the petitioner was "attempting to construe the statute contrary to its plain meaning, and in order to do so, must show clear legislative history supporting its asserted construction. Petitioner has failed to do so." *Id.* (citation omitted).

means only civil action against a vaccine administrator or manufacturer]. In creating the vaccine compensation program, Congress was not only concerned about remedying the problems faced by vaccine manufacturers; instead, Congress' overriding purpose was to provide an alternative to traditional tort litigation as a means of compensating persons injured by covered vaccines. Congress was disturbed by the uncertainty of the civil tort system as a means of compensating persons who were injured by vaccines, and was concerned that the opportunities for redress and restitution for vaccine-injured persons in the civil tort system were limited, time-consuming and expensive, and that often no recovery was available. H.R.Rep. No. 908, 99th Cong., 2d Sess. 3, 6 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347. Thus, Congress had a broader legislative purpose than merely preventing suits against vaccine manufacturers.

Brief for Appellant Secretary of Health and Human Services at 10. But none of the legislative history that the Secretary cites conflicts with an interpretation that "civil action" means only a civil action against a vaccine administrator or manufacturer. And the Secretary fails to explain, and we cannot independently discern, why this legislative history as a whole or any particular statutory goal expressed therein would lead to the contrary interpretation.

Furthermore, contrary to the Secretary's assertion that there is no "clear legislative history" to support the Schumachers' position, the legislative history explicitly states that the new compensation system set up by the Vaccine Act "consists of two separate, but related parts *and concerns only the actions of those injured by specified childhood vaccines and the manufacturers of such vaccines.*" H.R.Rep. No. 908, 99th Cong., 2d Sess. 3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6287, 6344 (emphasis added). Thus, it is clear that Congress intended the

prohibitions surrounding the filing of petitions for compensation under the Vaccine Act to apply only to civil suits against vaccine manufacturers (and, in light of the 1987 amendment discussed below, vaccine administrators).

In addition, the Vaccine Act's original § 300aa–11(a), when referring to specific civil actions, mentioned only those against vaccine manufacturers. *See* Act of Nov. 14, 1986, Pub.L. No. 99–660, § 2111(a), 100 Stat. 3743, 3758–59 (1986) (codified at 42 U.S.C. § 300aa–11(a)). The subsection was amended in 1987 to add vaccine administrators to those provisions where manufacturers were specifically referenced. *See* Omnibus Budget Reconciliation Act of 1987, Pub.L. No. 100–203, § 4306, 101 Stat. 1330, 1330–224 (1987).[7] The legislative history pertaining to this amendment explains the purpose of this addition: "While vaccine manufacturers are most often named in liability suits, administrators are sometimes joined as defendants. Although the Act provides that potential plaintiffs against manufacturers first pursue compensation, *the Act provides no restriction on actions against administrators.*" H.R.Rep. No. 391(I), 100th Cong., 1st Sess. 699 (1987), *reprinted in* 1987 U.S.C.C.A.N. 2313–1, 2313–373 (emphasis added). The emphasized portion of this history clearly shows that by passing the original Vaccine Act in 1986, Congress did not intend to bar civil actions against any party other than a vaccine manufacturer and that by adding, in 1987, the word "administrators" to those portions of § 300aa–11(a) that referenced vaccine manufacturers, Congress did not intend the Vaccine Act to bar civil actions against any party other than a vaccine administrator or manufacturer.

Other portions of the legislative history and other provisions of the statute bear this out. For example, as discussed above, § 300aa–11(a)(3), by its own terms, assumes the possibility of "a civil action for damages for a vaccine-related injury or death" for a

7. The legislative history prior to this 1987 amendment referred only to civil actions against vaccine manufacturers. Because, prior to the effective date of the Program, Congress amended the statute to apply also to civil actions against vaccine administrators, this opinion assumes the

application of the implications of this prior history to administrators as well and therefore refers to vaccine administrators as well as manufacturers when discussing the earlier history's significance.

post-effective-date vaccination brought against a party other than a vaccine administrator or manufacturer. Although § 300aa–11(a)(3) does not explicitly mention the timing of such a civil action with respect to the filing of a petition under the Program, the legislative history discusses the purpose of this provision as "prohibit[ing] the act—by impleader, cross-claim, or separate suit or any other practice—of making a vaccine manufacturer a party to any civil action brought by a person [whose petition would be for a post-effective-date vaccination] ... before that person *has completed a compensation proceeding.*" H.R.Rep. No. 908 at 14, *reprinted in* 1986 U.S.C.C.A.N. at 6355 (emphasis added). This language shows that Congress allowed for civil actions against parties other than vaccine administrators or manufacturers *while a petition for compensation was pending.* The Secretary's interpretation of the statute, allowing for civil actions only *after* the proceedings for a petition for compensation have been completed, would thus render § 300aa–11(a)(3) meaningless. Standard canons of construction, however, require us, if possible, to interpret a statutory provision in such a manner as to give effect to every other provision. 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.05, at 104 (5th ed. 1992). Thus, the phrase "has pending a civil action" in § 300aa–11(a)(5)(B) refers only to civil actions against a vaccine administrator or manufacturer.

This interpretation is further supported by still other sections of the Vaccine Act and their legislative history. For example,

§ 300aa–11(a)(5)(A), the companion to the subsection at issue here, provides:

A plaintiff who on the effective date of this subpart has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after the effective date of this subpart or before judgment, whichever occurs first, petition to have such action dismissed without prejudice or costs and file a petition under subsection (b) of this section for such injury or death.

The legislative history discusses § 300aa–11(a)(5) only in terms of suits against vaccine manufacturers, not just any party:

If a person in the second group [8] has a *tort action against a manufacturer* pending at the time of enactment, he or she may elect to maintain such an action or may, within two years of enactment or before judgment in the action (whichever comes first), elect to withdraw the action without prejudice and enter the compensation system.

H.R.Rep. No. 908 at 14, *reprinted in* 1986 U.S.C.C.A.N. at 6355 (emphasis added). The legislative history continues by stating: "If such a person elects to maintain *the civil action,* he or she is permanently barred from entering the compensation system." *Id.* (emphasis added). The highlighted phrase, "the civil action," plainly refers to the "tort action against a manufacturer" discussed in the previous sentence. Thus, this sentence of the legislative history, which analyzes the scope of the bar in the original § 300aa–11(a)(5)(B),[9] discusses the "civil action" of

---

8. The second group is defined as "those injured less than eight years ago but by a vaccine administered before enactment of the legislaton [sic]." H.R.Rep. No. 908 at 13, *reprinted in* 1986 U.S.C.C.A.N. at 6354.

9. Section 300aa–11(a)(5)(B) originally provided: "If a plaintiff who on the effective date of this subtitle had pending a civil action for damages for a vaccine-related injury or death does not withdraw the action under subparagraph (A), such person may not file a petition under subsection (b) for such injury or death." *See* Pub.L. No. 99–660, § 2111(a)(5)(B), 100 Stat. at 3759. The word "subtitle" was changed to "part" in 1987. *See* Pub.L. No. 100–203, § 4302(b)(1), 101 Stat. at 1330–221. In 1989, Congress replaced the phrase "on the effective date of this part had

pending" with "has pending" and struck out the phrase "does not withdraw the action under subparagraph (A)." *See* Pub.L. No. 101–239, § 6601(c)(3)(B), 103 Stat. at 2285. This change was made to "clariff[y] that a plaintiff in such an action [as that described in § 300aa–11(a)(5)(A)] whose action is still pending may not enter the compensation system." H.R.Rep. No. 247, 101st Cong., 1st Sess. 511 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1906, 2237. This court, without deciding the scope of the phrase "civil action," has held that Congress did not intend with this change to write out the limitation "on the effective date of this part" such that it would create a loophole to allow a plaintiff in a civil action against a vaccine administrator or manufacturer that was pending at the effective date but completed before the filing of the petition to file such

that subsection as only a civil action against a vaccine manufacturer (or, in light of the 1987 amendment discussed above, vaccine administrator).

■ Furthermore, the legislative history also refers to the "civil action" in § 300aa–11(a)(6) [10]—the only subsection of § 300aa–11(a), other than 11(a)(5)(A) and (B), that refers to a "civil action" without mentioning vaccine administrators or manufacturers—as a civil action against a manufacturer. *See id.* at 14, *reprinted in* 1986 U.S.C.C.A.N. at 6355 ("If a person in the second group initiates *a civil action against a manufacturer* after the enactment of this legislation without first completing the compensation system, he or she may not enter the compensation system.") (emphasis added). Consequently, the legislative history [11] indicates that the phrase "civil action" in each provision of § 300aa–11(a) other than (3), where it is clearly shown to the contrary, means a civil action against a vaccine administrator or manufacturer.[12]

## VI. State Statutes of Limitation

Finally, the Vaccine Act provision regarding state limitations of actions (§ 300aa–16(c)) confirms this analysis for two reasons. First, that subsection discusses the timing of the tolling of state civil actions for vaccine-related injury or death only in terms of § 300aa–21(a), which provision, as shown above, applies only to civil actions against a vaccine administrator or manufacturer:

> If a petition is filed under section 300aa–11 of this title for a vaccine-related injury

or death, limitations of actions under State law shall be stayed with respect to a civil action brought for such injury or death for the period beginning on the date the petition is filed and ending on the date (1) an election is made under section 300aa–21(a) of this title to file the civil action, (2) an election is made under section 300aa–21(b) of this title to withdraw the petition, or (3) the petition is considered withdrawn under section 300aa–21(b) of this title.

§ 300aa–16(c).

If Congress intended the tolling provision to apply to civil actions against parties other than vaccine administrators or manufacturers, the subsection would not end the tolling only when the petitioner made the election under § 300aa–21(a) to file a civil action or withdrew the petition. As conceded by the Secretary, because § 300aa–21(a) only restricts a petitioner who accepts a compensation award from bringing a civil action against a vaccine administrator or manufacturer, a person may always file a vaccine-related civil action against a party other than a vaccine administrator or manufacturer *after* judgment has been entered on a petition, *even if* compensation has been awarded and accepted (under § 300aa–21(a)). The Secretary construes the statute, however, to provide that a person must bring the petition under the Program first, and must wait until final judgment is entered on the petition before filing such a civil action if that person wishes to pursue compensation under the Program at all. Therefore, in order to apply

---

petition. *See Amendola v. Secretary of the Dep't of Health & Human Servs.*, 989 F.2d 1180, 1185 (Fed.Cir.1993).

**10.** Section 300aa–11(a)(6) states: "If a person brings a civil action after November 15, 1988 for damages for a vaccine-related injury or death associated with the administration of a vaccine before November 15, 1988, such person may not file a petition under subsection (b) of this section for such injury or death."

**11.** *See also* H.R.Rep. No. 908 at 22, *reprinted in* 1986 U.S.C.C.A.N. at 6363 (discussing § 300aa–15(f) in terms of a civil action against a vaccine manufacturer although the text of the subsection refers to just a "civil action"); *id.* at 29, *reprinted in* 1986 U.S.C.C.A.N. at 6370 (same re § 300aa–23(e)).

**12.** The Secretary argues that §§ 300aa–11(a) and –12(b) together constitute a waiver of the government's sovereign immunity and that, therefore, the language of § 300aa–11(a)(5)(B) must be strictly construed in favor of the United States. We agree that a waiver of sovereign immunity must be "unequivocally expressed" and not merely implied by a court. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990). However, as our analysis shows, we conclude that in § 300aa–11(a)(5)(B) Congress did unequivocally express its intent to waive sovereign immunity in the type of circumstances presented in this case.

§ 300aa–16(c) to such non-administrator and non-manufacturer civil actions, Congress would have had to include a provision in that subsection for ending the tolling for such suits at the time the final judgment on the petition was entered, even if the petitioner elected to receive awarded compensation. Congress did not do this.

Consequently, under the Secretary's interpretation of the statute, a person may never be able to bring such a civil action. Under that analysis, a person may not bring the civil action before final judgment has been entered on the petition, which, with motions for review to the Claims Court and appeals to our court, may take several years; but if the person waited until that time, there is a good chance that the state limitation on the tort action would have run. Surely, Congress did not intend such a bar to any non-administrator/non-manufacturer civil action. Indeed, as discussed above, the Secretary concedes that such a suit may be brought; the Secretary only asserts that the timing of such a suit is dictated by § 300aa–11(a)(5)(B). However, as shown here, § 300aa–16(c) renders such an interpretation of § 300aa–11(a)(5)(B) implausible.

Second, by its own terms, § 300aa–16(c) only tolls state civil actions for "vaccine-related injury or death." Therefore, any non-vaccine-related issues in a civil action, like the Schumachers' claim in the Merrell Dow suit that Bentyl, by itself, injured Donald and predisposed him to other injury, would not be tolled. Thus, even if, as the Secretary argues, a person were barred from bringing civil actions for vaccine-related injury or death until after judgment is entered on a petition, a civil action that included separate claims that were *not* even arguably vaccine-related, as in the Merrell Dow suit, would be precluded if claimed as alternatives in a suit with arguably vaccine-related claims. In order to avoid having his or her claims barred, a person would have to decide what claims were non-vaccine-related and bring the suit on those claims within the state limitations time period. Then, if the vaccine-related claims were not barred by res judicata (which would normally bar claims involving the same parties and facts that could have

been brought in the first suit) by reason of such claims being "stayed" by the Vaccine Act until completion of compensation proceedings, the person would have to bring a *second* civil action on those claims after final judgment was entered on the petition.

In other words, if the Schumachers had followed this road map that is the logical result of the Secretary's argument, they would have had to:

(1) File a civil action in state court (or federal district court if any federal or diversity jurisdiction arises under the claims) against Merrell Dow on all claims that do not implicate the vaccine (and this presumes that they would know which claims would never be interpreted by any party or court as implicating the vaccine) before the state statute of limitations runs on those claims.

(2) File a petition for compensation under the Program in the United States Court of Federal Claims within the Vaccine Act's limitations period for such a petition.

(3) After the compensation proceedings are completed, whether or not compensation was awarded, file a *second separate* civil action in state (or federal district court, *see* (1) above) against Merrell Dow on any vaccine-related claims.

Thus, under the Secretary's interpretation, the Vaccine Act would produce the absurd result of possibly requiring (and certainly allowing), in addition to the compensation proceeding, *two* separate suits (quite possibly resulting in two completely separate trials in front of two different judges) against a party other than a vaccine administrator or manufacturer on the same facts for different claims. Congress will not be deemed to have intended absurd results, particularly absent clear expression to the contrary, which is not found here.

CONCLUSION

■ Based on the foregoing, we conclude that the Merrell Dow suit does not constitute a "civil action for damages for a vaccine-related injury or death" for the purposes of § 300aa–11(a)(5)(B). Consequently, we hold that the Schumachers' petition for compensa-

tion under the Vaccine Act was not jurisdictionally barred and that, therefore, the Claims Court indeed had jurisdiction over such petition. Accordingly, the judgment of the Claims Court awarding compensation is

AFFIRMED.